IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ELOISE CARTER
and MARY HENDRIX                                          PLAINTIFFS

        v.              CASE NO. 6:14-CV-6092

PRIMARY HOME CARE OF
HOT SPRINGS, INC.
and TIM McDONALD                                         DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are the Motion for Partial Summary Judgment (Doc. 11) and supporting documents (Docs. 12-13) filed on behalf of Plaintiffs Eloise Carter and Mary Hendrix ("Plaintiffs"), the Response (Doc. 19) and supporting documents (Docs. 20-21) filed on behalf of Defendants Primary Home Care of Hot Springs, Inc. and Tim McDonald ("Defendants"), and Plaintiffs' Reply (Doc. 23).

Also before the Court are Defendants' Motion for Summary Judgment (Doc. 14) and supporting documents (Docs. 15-16), and Plaintiffs' Response to the Motion (Doc. 17) and Response to the Statement of Facts (Doc. 18).

For the reasons set forth below, Plaintiffs' Motion for Partial Summary Judgment (Doc. 11) is **GRANTED IN PART AND DENIED IN PART**, and Defendants' Motion for Summary Judgment (Doc. 14) is **DENIED**.

## I. Background

On July 16, 2014, Plaintiffs filed their Complaint in the Circuit Court of Garland County, Arkansas, alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Arkansas Minimum Wage Act, Ark. Code Ann. §§ 11-4-201, *et seq.* ("AMWA") by failing to pay them minimum wage and failing to properly compensate them for overtime hours worked.  On August 15, 2014, Defendants filed a Notice of Removal to this Court alleging jurisdiction to be proper under 28 U.S.C. § 1331 and removal to be proper under 28 U.S.C. § 1441(a).  (Doc. 1).

Separate Defendant Primary Home Care of Hot Springs, Inc. ("PHC") is a for-profit Arkansas corporation that did business in Garland County from 2011 until January 2013.  PHC is owned by Separate Defendant Tim McDonald ("McDonald").  At the end of 2010, Defendants purchased a business that provided residential care for elderly clients in Hot Springs, Arkansas.  PHC's clients lived in three different houses, two of which were owned by PHC and one of which was leased by PHC from a third party.  PHC operated this business through 2011 and 2012, but sold it back to the original owner in early 2013.

Plaintiffs (and others) provided in-home care for PHC's clients.  Plaintiffs generally worked 24-hour shifts, arriving at a residence around 8:00 a.m. to begin their daily duties,

which included assisting the residents with bathing, grooming, and dressing, preparing meals for them, making sure they took their medications, and keeping them entertained and engaged in activities. Plaintiffs also performed housekeeping chores and maintenance of the residences. Plaintiffs signed an "independent contractor contract" with PHC which detailed these and other responsibilities they were expected to fulfill as caregivers with respect to PHC's clients. As suggested by its title, this contract contained language indicating that Plaintiffs would be treated as independent contractors rather than employees of PHC. The contract specifically provided that Plaintiffs would not be paid minimum wage or overtime, but that "[w]ages are based on a set fee for a set period of time . . . ." The justification for this treatment, according to the contract, was that Plaintiffs would be providing companionship services for PHC's elderly clients and would therefore be exempt from the FLSA's minimum wage and maximum hour requirements pursuant to section 213(a)(15). Plaintiffs were generally paid $120.00 per 24-hour shift worked, with Plaintiff Carter being paid an additional $120.00 per week when she had responsibility as a site manager.

## II. Standard of Review

In determining whether summary judgment is appropriate, the burden is placed on the moving party to establish both the

absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The Court must review the facts in a light most favorable to the party opposing a motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.,* 135 F.3d 1211, 1212-13 (8th Cir. 1998) (citing *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir. 1983)).

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998) (citing *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir. 1981)). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Furthermore,

"[w]here the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996) (quoting *Crain v. Bd. of Police Comm'rs,* 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

## III. Discussion

### A.  Plaintiffs' Motion for Partial Summary Judgment

Although Plaintiffs have alleged violations of both the AMWA and the FLSA, they move for summary judgment only as to liability on their AMWA claim. Plaintiffs contend that this Court may conclude as a matter of law that: (1) they were "employees" as that term is defined under the AMWA, (2) McDonald is jointly and severally liable with PHC as an employer for any violations of the AMWA, and (3) Defendants violated the AMWA by failing to pay Plaintiffs a minimum wage of $6.25 per hour and failing to pay Plaintiffs at an overtime rate when they worked more than forty hours per week. (Doc. 11).

Defendants, on the other hand, argue that Plaintiffs were not employees under the AMWA. (Doc. 19). Defendants assert that Plaintiffs were either independent contractors or that they were excluded from the AMWA's definition of "employee" as providers of companionship services to elderly individuals pursuant to Ark. Code Ann. § 11-4-203(3)(O)(ii). Defendants further contend that even if Plaintiffs are found to have been

employees, they were properly compensated for all hours worked after bona fide meal periods and regularly scheduled sleeping periods were excluded from hours worked as allowed under Rule 010.14-108(D)(3)(a) of the Administrative Regulations of the Labor Standards Division of the Arkansas Department of Labor.

The FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner. *See Whitworth v. French Quarter Partners, LLC*, No. 13-cv-6003, (W.D. Ark. June 30, 2014); *Lyons v. Conagra Foods Packaged Foods, LLC*, No. 4:12-cv-245, at 6 (E.D. Ark. Oct. 31, 2013); *Helmert v. Butterball, LLC*, 805 F. Supp. 2d 655, 663 n.8 (E.D. Ark. 2011). This conclusion is based upon the courts' prediction as to how the Arkansas Supreme Court would interpret the AMWA, as it has not yet had occasion to do so.[1] The Court will analyze Plaintiffs' AMWA claims in the same manner as it will their FLSA claims.

### 1. Plaintiffs' Employee Status

The AMWA broadly defines an "employee" as "any individual employed by an employer," while excluding from this definition

---

[1] This prediction is supported by Rule 010.14-112 of the Administrative Regulations of the Labor Standards Division of the Arkansas Department of Labor, which directs that "[t]he department may rely on the interpretations of the U.S. Department of Labor and federal precedent established under the [FLSA] in interpreting and applying the provisions of the [AMWA] . . . except to the extent a different interpretation is clearly required."

certain individuals in specific employment situations (such as bona fide independent contractors). Ark. Code Ann. § 11-4-203(3). The AMWA defines "employ" to mean "to suffer or permit to work." Ark. Code Ann. § 11-4-203(2). The FLSA contains similar definitions of these terms which the courts have recognized as being quite broad. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting that the verb "employ" under the FLSA is defined with "striking breadth"). In determining whether an individual is an employee, the courts look to the "economic reality" of all of the circumstances concerning whether the putative employee is economically dependent upon the alleged employer. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *Aimable v. Long & Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994).

In order to assess the degree of economic dependence present in this case, the following factors will be considered: (1) the degree of control exercised by the employer over the workers; (2) the workers' opportunity for profit or loss and their investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business. *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001); *see also United States v. Silk*, 331 U.S.

704 (1947); *Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2nd Cir. 1988). No one factor alone is dispositive; instead, courts must look to the totality of the circumstances with an eye to determining the degree to which an individual is dependent upon the alleged employer. *Morrison*, 253 F.3d at 11. "[T]he final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976).

### (a) Degree of Control

The first factor to be analyzed under the economic reality test is the degree of control exercised by the employer over the workers. The question that must be answered is whether a worker's "freedom to work when she wants and for whomever she wants reflects economic independence, or whether the freedoms merely mask the economic reality of dependence." *Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995) (citing *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 300-02 (5th Cir. 1975)). "An employer cannot saddle a worker with the status of independent contractor, thereby relieving itself of its duties under the F.L.S.A., by granting him some legal powers where the economic reality is that the worker is not and never has been

independently in the business which the employer would have him operate." *Mednick*, 508 F.2d at 303.

Plaintiffs argue that Defendants exercised a great degree of control over them in their work. Plaintiffs point out that their work schedule was created by a site manager and approved by McDonald. Because PHC's clients could not be left alone for any period of time, Plaintiffs were not allowed to leave the premises during their shifts. Even when a shift was over, Plaintiffs could not leave until the next caregiver arrived to begin his or her shift. Plaintiffs were not allowed visits from friends, children, or relatives while working. The "independent contractor contract" signed by Plaintiffs contained a detailed, bullet-point list of the "[r]esponsibilities of a caregiver." Plaintiffs' responsibilities included preparing meals for the residents, assisting the residents with bathing and dressing, making sure the residents took their medications, keeping the residents entertained and engaged in activities, getting the residents ready for bed, keeping a chart of the residents' activity, performing maintenance on the residences, and doing laundry and housekeeping chores around the residences. Caregivers were subject to termination if they failed to show up regularly for their scheduled shifts or if they were suspected of drug use.

Defendants, on the other hand, argue that Plaintiffs exercised significant control over the manner in which they performed their duty as caregivers. Defendants claim that Plaintiffs were in charge of when and in what manner they performed the household chores and provided the caregiver/companionship services. According to Defendants, Plaintiffs could schedule their shifts when they chose and were free to provide caregiver services elsewhere to other clients without violating their contract with PHC. Plaintiffs had little to no direct supervision, and McDonald was only present at the residences sporadically, usually when there were new residents.

It appears that Plaintiffs were allowed a degree of discretion with regard to how they performed their duties, and that they may have had some involvement in choosing their own schedules. It is clear, however, that PHC exercised significant control over Plaintiffs in the rules they were expected to follow and the responsibilities they were expected to fulfill. The reality is that Plaintiffs were not independently in the business of being caregivers apart from PHC. The degree of control exercised reflects the reality that Plaintiffs were economically dependent on PHC, and the Court finds that this factor weighs in favor of Plaintiffs' employee status under the AMWA.

**(b)** **Opportunity for Profit and Loss and Investment in the Business**

The evidence shows that McDonald and one other individual (described by McDonald as a "financial partner in the business") were the owners of PHC, and they were the ones who enjoyed the opportunity for any profit and bore the risk of any loss from the business. PHC owned (or leased) the houses in which the clients resided. PHC provided the food and supplies used for the care of its clients.

On the other hand, Plaintiffs had no ownership interest in the business. There is no indication that Plaintiffs were required to make any amount of investment in order to perform their work as caregivers. Plaintiffs were paid at a rate of $120.00 per 24-hour shift, plus an extra $120.00 per week if they had responsibility as a site manager. There was no profit-sharing or other opportunity for Plaintiffs to make any more than this set amount.

The Court finds that Plaintiffs in this case are "far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments." *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1051 (5th Cir. 1987), *cert. denied*, 484 U.S. 924 (1987). The Court accordingly finds that this factor of the economic

reality test also weighs in favor of Plaintiffs' employee status.

### (c) Degree of Skill and Initiative Required

The parties are in agreement that the companionship and caregiver services provided by Plaintiffs did not require a high degree of skill or any specialized training. Although Defendants point out that Plaintiffs' success in providing companionship services depended upon their "initiative" in engaging with PHC's clients, such initiative toward rapport-building is not relevant to this factor of the economic reality analysis. This factor instead contemplates certain elements of business initiative, such as attempts to advance a business and expand its client base and goodwill through advertising, marketing and sales methods, and choice of products or services to offer. *See Reich v. Circle C. Invs.*, 998 F.2d 324, 328 (5th Cir. 1993); *Priba Corp.*, 890 F. Supp. at 593.

Defendants were responsible for building the business of PHC by advertising and procuring clients. There is no indication that Plaintiffs had any responsibilities in this regard. Plaintiffs did not have "the opportunity to exercise the skill and initiative necessary to elevate their status to that of independent contractors." *Priba Corp.*, 890 F. Supp. at 593; *see also Circle C. Invs., Inc.*, 998 F.2d at 328 (finding that plaintiffs "d[id] not exhibit the skill or initiative

indicative of persons in business for themselves"). The Court finds that this factor also weighs in favor of Plaintiffs' employee status.

### (d) Permanence of the Working Relationship

"The more permanent the [working] relationship, the more likely it is that a court will find a worker to be an employee." *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 150 (D.D.C. 2011). Plaintiff Carter worked as a caregiver for the previous owners of the business for approximately six years, and she continued in this work during the entire period the business was owned by Defendants up until the time the business was sold back to the previous owners in January 2013. Plaintiff Hendrix began working as a caregiver in August 2011 and continued in this work for almost seventeen months until her termination in January 2013. Defendants do not offer any counter-argument regarding this factor of the economic reality test. The Court accordingly finds that it weighs in favor of Plaintiffs' employee status (although, especially with regard to Plaintiff Hendrix, not as heavily in favor as do the other factors).

### (e) Extent to Which the Work is an Integral Part of the Business

It is clear from the evidence in this case that the main business of PHC was providing caregiving and companionship services to its clients. Plaintiffs' work in providing these

services was clearly an integral part of PHC's business. This is yet another indicator of Plaintiffs' economic dependence upon PHC, and the Court finds that this factor weighs in favor of Plaintiffs' employee status.

### (f) Consideration of All Factors

All factors of the economic reality test weigh in favor of a finding that Plaintiffs were employees of PHC rather than independent contractors. Ultimately, Plaintiffs were not independently in the business of providing caregiving and companionship services apart from PHC's business. Unless Plaintiffs meet the criteria for exemption under the AMWA (as is discussed in more detail below), they will be considered employees of PHC for AMWA purposes.

### 2. Defendants' Employer Status

The parties agree that PHC had at least four employees at all times relevant to this action, so there is no dispute that PHC is an employer as defined under the AMWA. Ark. Code Ann. § 11-4-203(4). The definition of an "employer" under the AMWA also includes any person acting directly or indirectly in the interest of an employer in relation to an employee. Plaintiffs contend that McDonald is an employer under the AMWA, noting that he meets all criteria typically considered by the courts in

making such a determination.[2]  Defendants have failed to provide
any argument to the contrary on this issue, and the Court will
accordingly treat it as conceded.  McDonald is an employer for
AMWA purposes and will be jointly and severally liable with PHC
for any AMWA violations that Plaintiffs are able to prove.

### 3.  The Companionship Services Exception

Defendants contend that Plaintiffs are excepted from the
definition of "employee" under the AMWA.  Although the AMWA's
general definition of "employee" is quite broad, there are a
number of specific situations in which workers are excepted from
the general definition.  Ark. Code Ann. § 11-4-203(3).
Defendants contend that one such exception applies to Plaintiffs
– namely, the so-called "companionship services" exception.
Ark. Code Ann. § 11-4-203(3)(O)(ii).  The AMWA's minimum wage
and overtime provisions do not apply to a worker who is
"employed on a casual basis in domestic service employment to
provide . . . [c]ompanionship services for individuals who are
unable to care for themselves because of age or infirmity," and
Defendants argue that Plaintiffs met the criteria for this
exception to apply.

---

[2] "To determine whether an individual or entity is an employer, the court
considers whether the alleged employer: (1) possessed the power to hire and
fire employees; (2) supervised or controlled employee work schedules or
conditions of employment; (3) determined the rate or method of payment; and
(4) maintained employee records." *Gray v. Powers*, 673 F.3d 352, 355 (5th
Cir. 2012).  Plaintiffs point out in their Reply (Doc. 23) that Defendants
admit to certain material allegations of fact establishing that McDonald met
these criteria.

As discussed above, the AMWA is generally interpreted in the same manner as the FLSA. Further, the Arkansas Department of Labor's regulations concerning AMWA coverage and exemptions specifically state that 29 C.F.R. Part 552 should be used for purposes of interpreting the domestic service employment exemptions and in defining the relevant terms contained therein. Ark. Admin. Code § 010.14-106(B)(15). Under 29 C.F.R. § 552.3, "[t]he term domestic service employment means services of a household nature performed by an employee in or about a private home (permanent or temporary)." The point of contention among the parties with regard to this exemption is whether Plaintiffs provided services to PHC's clients in private homes.

Exemptions in FLSA and AMWA cases are to be narrowly construed in order to further the legislative goal of providing broad employment protection. *Spinden v. GS Roofing Prods. Co., Inc.*, 94 F.3d 421, 426 (8th Cir. 1996). An employer bears the burden of proving the applicability of an exemption by "demonstrat[ing] that [its] employees fit 'plainly and unmistakably within the exemption's terms and spirit.'" *McDonnell v. City of Omaha, Neb.*, 999 F.2d 293, 296 (8th Cir. 1993), *cert. denied*, 510 U.S. 1163 (1994) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

There does not appear to be any dispute that the services provided by Plaintiffs are properly characterized as

companionship services within the meaning of the exemption. However, Plaintiffs contend that these services were not provided in private homes, as PHC owned or leased the houses in which its clients resided. Plaintiffs argue that when a defendant is in the business of providing both companionship services and lodging to its clients, the residences it operates should not be considered private homes.

Plaintiffs cite a Tenth Circuit case in which that court surveyed several district court cases interpreting the meaning of "private home" in the context of the companionship services exception to the FLSA. *See Johnston v. Volunteers of Am. Okla., Inc.*, 213 F.3d 559 (10th Cir. 2000). One of these district court decisions discusses the legislative history of the FLSA and notes that a private home is "a fixed abode of the individual or family and that it is a separate and distinct dwelling maintained by the individual or family." *Lott v. Rigby*, 746 F. Supp. 1084, 1087 (N.D. Ga. 1990) (citing H.R. Rep. No. 913, 93rd Cong., 2nd Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2845). The court in *Lott* emphasized that a private home is one maintained by an individual or family, and concluded that services were not provided in a private home based largely on the fact that the individuals receiving care did not maintain the residence. *Id.* at 1087-88.

The court in *Johnston* agreed with another district court in finding that a determination as to whether companionship services are provided in a private home is "'fact-specific and to be made on a case-by-case basis, and that no factor is dispositive.'" *Johnston*, 213 F.3d at 565 (quoting *Madison v. Res. for Human Dev., Inc.*, 39 F. Supp. 2d 542, 546 (E.D. Pa. 1999)). In that case, the court determined that the defendant ran the residences at issue "as part of an overall care program," that the clients lived there "as clients of the program," and that the service provider was ultimately in charge of the residences. *Id.* at 564 (quoting *Madison*, 39 F. Supp. 2d at 548). Although the clients were given the opportunity to make certain choices for themselves, the court also noted that they paid room and board fees to the defendant who rented the houses and paid the expenses. *Id.* Accordingly, the court found that the services were not provided in private homes and that the companionship services exemption did not apply.

In arguing that Plaintiffs provided services in private homes in the instant case, Defendants state that PHC's clients chose where and with whom they wanted to live and entered into residential lease contracts with PHC. The clients also provided their own furniture. Defendants point out that the rent and the companionship services were paid for on a monthly basis by private rather than public funds. These are the only facts

cited by Defendants to support the conclusion that Plaintiffs provided companionship services in private homes.

The defendant in *Madison* emphasized very similar factors in arguing that its clients resided in private homes, "noting especially that the clients themselves decide whether they have housemates and, if so, with whom they share, and that they select the furnishings of their homes." *Madison*, 39 F. Supp. 2d at 548. Although these factors had been considered by another court to be important in its determination that services were being provided in private homes, the court in *Madison* distinguished that case on the basis that all of the clients either owned the homes outright or leased them directly from independent third parties, whereas the clients in *Madison* rented from the defendant. *See id.* (citing *Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1294 (N.D. Okla. 1998)).

The instant case is more like the situation in *Madison*, as the houses in question were owned or leased by PHC which then entered into a "Service Agreement and Resident Contract" with its clients. The terms of this agreement are instructive. The agreement states that "PHC is a private pay residential care facility located at: 760 Westinghouse, 126 Etta, and 143 Carol Streets, Hot Springs, AR 71901."[3] While Defendants assert that

---

[3] These are the addresses of the three houses owned or leased by PHC in which its clients resided.

PHC entered into "residential lease contracts" with its clients, the terms of the agreement do not purport to give the clients any legally cognizable possessory interest in any of the houses that make up PHC's "facility." Under the agreement, a client paid to PHC a monthly fee of $3,750.00, which presumably covered room, board, and companionship/caregiver services. There is no breakdown provided in the agreement as to how much of the fee was allocated to rent and how much to services. Additional terms of the agreement (along with the other evidence before the Court) make it clear that Defendants were in charge of maintaining the residences rather than PHC's clients. For example, the agreement provides that PHC will assume responsibility for providing all supplies used in the care of its clients, for providing "a safe environment that includes all livable and common areas," and for implementing a "preventive maintenance program to ensure essential mechanical, electrical, and patient care equipment is maintained in safe operating condition." In the instant case, as in *Madison*, Defendants maintained the residences as part of an overall care program and the residents lived there as clients of the program.

The Court finds that, when viewing the evidence before it in the light most favorable to Defendants, Plaintiffs did not provide services to PHC's clients in private homes. Consequently, Defendants have failed to meet their burden of

showing that Plaintiffs fit plainly and unmistakably within the companionship services exemption of the AMWA, and Plaintiffs are entitled to summary judgment on this point.

### 4. Violation of the AMWA

Although the Court finds that Plaintiffs are employees and Defendants are employers for AMWA purposes, genuine issues of fact exist that prevent the Court from being able to determine as a matter of law that Defendants violated the AMWA. The Administrative Regulations of the Labor Standards Division of the Arkansas Department of Labor provide:

> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep.

Ark. Admin. Code § 010.14-108(D)(3)(a). The Court finds that several questions of fact exist surrounding this issue, such as whether an agreement existed among the parties to exclude meal periods and sleeping periods, whether adequate sleeping facilities were furnished, and whether Plaintiffs could usually enjoy an uninterrupted night's sleep. These questions of fact preclude any ultimate finding as to liability under the AMWA at this point, and Plaintiffs' Motion for Partial Summary Judgment (Doc. 11) is denied as to this issue.

**B.  Defendants' Motion for Summary Judgment**

In their Motion for Summary Judgment (Doc. 14), Defendants argue that:  (1) Plaintiffs were independent contractors rather than employees under the AMWA and the FLSA; (2) Plaintiffs were not entitled to minimum wage and overtime pay under the AMWA and the FLSA because they fell under the companionship services exemption; and (3) even if Plaintiffs were employees under the AMWA and the FLSA, they were properly paid for all hours worked after accounting for regularly scheduled sleeping periods.

For the reasons discussed above, the Court has concluded that Plaintiffs were not independent contractors and that the companionship services exemption is not applicable; Defendants are therefore not entitled to summary judgment on these points. The Court has also concluded that issues of fact exist as to whether Plaintiffs were properly paid under the AMWA and the FLSA for all hours worked, so summary judgment is likewise not appropriate on this point.

In their Brief in Support of Motion for Summary Judgment (Doc. 16), Defendants also briefly argue that there is no FLSA coverage in this case because interstate commerce is not implicated.  Plaintiffs respond that the FLSA provides coverage for employees engaged in commerce or employed in an enterprise engaged in commerce, and that the standards for what constitutes "engaging in commerce" under the FLSA are quite broad.

The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a minimum wage.  29 U.S.C. § 206(a).  "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  "'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose . . . ."  29 U.S.C. § 203(r)(1).  "Enterprise engaged in commerce or in the production of goods for commerce" refers to an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . .

29 U.S.C. § 203(s)(1).  An enterprise that "is engaged in the operation of . . . an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution" is also considered to be engaged in commerce.  29 U.S.C. § 203(s)(1)(B).

Plaintiffs contend that FLSA coverage exists in this case because they prepared meals for PHC's clients with food that was produced for and moved in commerce and handled and dispensed medications that were produced for and moved in commerce. Plaintiffs also assert that PHC was an enterprise engaged in commerce under 29 U.S.C. § 203(s)(1)(B) because the sole focus of the business was caring for the aged. The Court finds that issues of fact exist as to FLSA coverage such that Defendants are not entitled to summary judgment on this issue. Defendants' Motion for Summary Judgment (Doc. 14) is denied in its entirety.

## IV. Conclusion

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment (Doc. 11) is **GRANTED IN PART** to the extent that the Court finds as a matter of law that: (1) Plaintiffs are "employees" as defined under the AMWA rather than independent contractors, (2) Plaintiffs are not excepted from being considered employees under the AMWA by the companionship services exemption, and (3) Defendant Tim McDonald is an employer for purposes of the AMWA and will be jointly and severally liable with Defendant Primary Home Care of Hot Springs, Inc. for any violations of the AMWA that Plaintiffs may prove at trial; Plaintiffs' Motion is **DENIED IN PART** as to the ultimate issue of liability under the AMWA; and Defendants' Motion for Summary Judgment (Doc. 14) is **DENIED.** This matter

remains set for a jury trial on **June 15, 2015 at 9:00 a.m. in Hot Springs, Arkansas.**

IT IS SO ORDERED this 14th day of May, 2015.

/s/ Robert T. Dawson_____
Honorable Robert T. Dawson
United States District Judge